DARNE and GASSAWAY *vs.* CATLETT, *et ux.*

JUNE.

APPEAL from the court of chancery.   *Charles Gassaway*,
the father of the female appellee, died in the year 1816,

G. by will be-
queaths, among
other things, as
follows:  "I give
and bequeath to
my executors herein after named, or the survivor of them, the sum of $6000, to be put to interest, or
vested in some stock or funds, within one year after my decease, and the interest arising therefrom, I di-
rect my said executors to pay annually to my daughter P. G. for and during her natural life, if in the
opinion of my said executors, or the survivor of them, it should be necessary for her decent support;
and upon the decease of my said daughter, I order and direct the said sum of $6000, with the interest
accrued thereon, if any should remain unexpended, to be equally divided among the three children of
the said P. G. (his daughter.")—*Held*, 1. That though the executors abuse their trust by not paying to
P. G. the interest on the $6000. (she being in a situation to need it, for her decent support,) and by
not investing the 6000 dollars as directed by the bequest, they are not liable to pay interest on that
interest, unless it is proved that they had appropriated the bequest, or the proceeds thereof, to their
own use, or in some way made profit therefrom, or subjected them to hazard
2. That the executors were not bound or authorized to invest the accruing interest on the $6000,
which might remain in their hands unappropriated to the support of P G, but were bound to hold the
same to be applied to P G's support, as her wants might require—and
3 That in a bill by P G, and her husband, against the executors, to enforce the trust created by the
bequest, it is not necessary to make the children of P G. parties

1825

Darne
vs
Catlett

having by his will, among other things, bequeathed as fol-
lows: "I give and bequeath to my executors hereinafter
named, or the survivor of them, the sum of six thousand
dollars, to be put to interest, or vested in some stock or
funds within one year after my decease; and the interest
arising therefrom, I direct my said executors to pay an-
nually to my daughter, *Polly Catlett*, (the female appellee,)
for and during her natural life, if in the opinion of my
said executors, or the survivor of them, it should be ne-
cessary for her decent support; and upon the decease of
my said daughter, I order and direct the said sum of six
thousand dollars, with the interest accrued thereon, if any
should remain unexpended, to be equally divided among
the three children of the said *Polly Catlett*, namely *De-
borah Edwards*, *Eliza Dorsey*, and *Evelina Dorsey*, or
the survivors of them." The appellants were appointed
the executors of this will, and took upon themselves the
execution thereof. The appellees filed a bill in chancery,
praying that the appellants might be made to account with
them for the interest which was then due, and to invest
the $6000 in some profitable stock or fund, as directed by
the will, and that they also might be made to pay the in-
terest of the same annually to *Polly Catlett*.

The case is more fully stated by the chancellor in his
decree. Testimony was taken under a commission issued
for that purpose, but as it relates solely to the fact, whether
the female appellee had been, and was in a situation, to
require for her decent support the payment to her of the
interest on the legacy, it is useless to detail it.

Johnson, Chancellor, (March Term 1823.) *Charles Gas-
saway*, the father of *Polly Catlett*, one of the complainants,
possessed of a large estate, by his last will and testament,
dated the 18th of November 1816, gave the same to each
of his children, except his daughter *Polly*, who appears
from the proceedings to have married without his appro-
bation, or that since her marriage the conduct of her hus-
band was such that her father was not willing to confide
in him, or to give her any property that might be under,
or subject to his control. Still solicitous to make a provi-
sion for her decent support, in his will he makes the fol-
lowing bequest: *(He here stated the bequest.)* The com-
plainants, in their bill allege, that the payment of the in-

1825.

Darne
vs.
Catlett

terest of the £6000 is necessary for the decent support of *Polly Catlett*, but that she has only received one year's interest on $2000. That the defendants, *Darne* and *Gassaway*, the executors named in the will, and who accepted the trust, not only refuse to pay the interest, but have failed to place the £6000 out on interest, or invest the same in stock or funds: That *Darne* has appropriated $2000 of the money to his own use, and *Gassaway* the balance. It is admitted by *Darne*, in his answer, that he has retained $2000 of the money in his hands, and that he expects to pay legal interest on the money, and that one year's interest has been paid by him to Mrs. *Catlett*. The reason he assigns for his conduct is, that soon after the testator's death, "he was informed that *Polly Catlett* had declared that she would not receive the money; whereupon he, and *Charles Gassaway* the other executor, determined to make such an application of the said interest as would enable them to meet such a state of the said *Polly Catlett's* circumstances as seemed to have been looked to by the testator, should such an event happen;" but on *hearing* that she wished to receive the interest on that part of the "fund retained by him," he sent her one year's interest, which she accepted. That "he supposed it might contribute to her happiness, and was not then advised that it was unnecessary for her decent support, he was *willing to believe* he should be justified in thus exercising his discretion." The answer then proceeds, that it is "his solemn conviction, that any decree or act by which the trustees will be deprived of the discretion given to them, will be palpably opposed to the will and intention of the testator, and defeat the just purposes and objects of the devise." *Charles Gassaway*, in his answer, also admits that he has retained in his possession the other $4000, and states, as his reason for not paying the interest, that "he don't believe that any part of the proceeds of the funds is necessary for the decent support of *Polly Catlett*, at this time, but on the contrary he verily believes, that to pay to her at this time one farthing of the proceeds, would be to deliver it into the hands of the complainant, *Grandison Catlett*, by whom it would be most grossly misapplied, to the injury of said *Polly Catlett*, and her children, who were principally intended by the testator to be provided for, by the said devise." The answer further states, that the defendants were de-

sirous to be able, from the proceeds of the said fund, to make some provision for the said *Polly Catlett*, when, from the unbounded indiscretion of the said *Grandison Catlett*, she shall be left so destitute as really to need it, for her de-cent support. That he knew his father never intended that any part of the fund should come "to the hands of the said *Grandison Catlett*, as he did not think him trust worthy, and the defendant regrets, that he is constrained to add to that opinion, the testimony of his own experience." On those grounds stated in the answers, the defendants resist the right of the complainant, Mrs. *Catlett*, the sister of one of the defendants, and the sister-in-law of the other, to partake in the slightest manner of that provision, de-signed by her father, not only to prevent her from suffer-ing for the want of the necessaries of life, but to enable her to make a decent appearance, suitable to one of his daughters. So far from the indiscretions of her husband presenting barriers to her right to the fund, it was them that caused the disposition in her favour to have been guard-edly made by the will. But for his conduct and deportment, but for the want of the same confidence in him, that was placed in his other children, and his other sons-in-law, his bounty towards her would have flowed to her direct. The benevolence of the executors would not have been called on to watch her situation, and to extend the bounty of the father towards her, in such a manner as to be out of the control of the husband; and at the same time so as to ex-tend to her a decent support. Neither of the defendants pretend to aver that she was in that prosperous situation as not to need her father's bounty, and the evidence clearly proves that she stands in need of it; but those executors, who profess so great a respect to her father's will, not only refuse to pay to her the interest, but disregarding the other provisions of the testament, take to themselves the funds; neither let them out on interest, nor invest them in pro-ductive funds. It was their duty to have put the money out at interest, or to have invested it; and if the interest, or the dividends of the stock, was not applied towards her decent support, *that* also should have been invested or ap-plied in a way most advantageous for the children. The dis-cretion placed by the testator in the executors would never have been confided in them, could he have anticipated the manner in which it has been abused. He never could have

supposed that this son, to whom he had been so bounteous by his will, would have kept from his sister, that which was necessary for her support, least a portion of it should be squandered away, "from the unbounded indiscretion" of her husband. Her father was aware of that indiscretion; the manner in which the provision for her is made, was predicated on that circumstance. It would be strange in the extreme, if the support he designed for her should be defeated on account of the deportment of her husband, when that was the cause of the guarded provision itself. He never could have conceived that his executors would have suffered his daughter to want, because it was their solemn conviction that any decree or "act, by which the trustees will be deprived of the discretion given to them, will be palpably opposed to the will and intention of the testator, and defeat the just purposes and objects of the devise." Nor would he have ever placed the trust in them, could he have conceived they would have kept the money to their own use. Trustees are peculiarly under the control of this court, and when a discretion is reposed in them, this tribunal will take care it shall not be abused. The discretion placed in them in this case, was intended for the benefit of Mrs. *Catlett*, and her children; if she needed the interest, (as it is evident she did,) it ought to have been paid to her; if she needed it not, it ought to have been again put out at interest or invested, that it might have accumulated for the benefit of her children. And as they have thought proper not so to do, it is the duty of the court to pass such a decree as will place the mother and children (so far as it is practicable,) in the same situation they would have been in had the trustees have done their duty.

On calculating the interest from the 25th of November 1818, to the 23d of April 1823, on the $2000 retained by *Darne*, and adding interest on the $120, he should have annually paid or invested, from the time the same ought to have been paid or invested, there is due from him interest amounting to $584 37½; and the interest from *Gassaway*, calculated on the same principle, but commencing on the 25th of November 1817, there is due on account of interest the sum of $1472 26 2-3. In order, therefore, that the complainant, Mrs. *Catlett*, may in future obtain the benefit of the provision made for her decent support by the will of her father—*Decreed*, that *William*

1825.

Darne
vs
Catlett

*Darne*, one of the defendants in this cause, on or before the 24th of June next, bring into this court the said sum of $584 37½, with interest thereon from the 23d of April instant. And that *Charles Gassaway*, the other defendant, bring into this court the said sum of $1472 26 2-3, on or before the said 24th day of June next, with interest thereon from the same 23d of April. *Decreed* also; that the said *William Darne*, annually, during the life-time of *Polly Catlett*, commencing on the 23d of April 1824, bring into this court the sum of $120, the legal interest on the $2000 retained by him, so long as he retains the said $2000. And that *Charles Gassaway* also bring into this court annually, commencing on the same 23d of April, the sum of $240, the legal interest on the $4000 retained by him, so long as he retains the same. *Decreed* also, that the said defendants be and they are hereby authorised, in order to free themselves from the annual payment of the interest as above directed, to pay into this court the principal money; the same, when brought in, to be invested and applied, under the direction of the court, pursuant to the will of *Charles Gassaway*, in the proceedings mentioned. And decreed also, that the defendants pay to the complainants their costs, &c.

From this decree the defendants appealed to this court.

The cause was argued before BUCHANAN, Ch. J. EARLE, MARTIN, STEPHEN, and ARCHER, J.

*Taney* and *B. Forrest*, for the Appellants, contended, that the decree was erroneous, 1. Because, by the clause of the will, a discretion was vested in the executors, with which the chancellor should not interfere without evidence of an abuse of the discretion, and that there was no such evidence in the record.

2. Because the executors were charged with compound interest.

3. Because proper parties had not been made. That *Deborah Edwards*, *Eliza Dorsey*, and *Evelina Dorsey*, named in the bequest, were interested therein, and should have been parties.

On the *first point*, they cited *Gower vs. Mainwaring*, 2 *Ves.* 87, 89, and *Bennett vs. Honeywood*, *Ambl.* 708, 710.

On the *second—The State of Connecticut vs. Jackson*,

1 *Johns. Chan. Rep.* 13. *Waring vs. Cunliffe,* 1 *Ves. jr.* 99.
*Newton vs. Bennett,* 1 *Bro. Chan. Ca.* 135, 362, (and
notes by *Eden,*) 375. *Schieffelin vs. Stewart,* 1 *Johns.*
*Chan. Rep.* 620; and *Raphael vs. Boehm,* 11 *Ves.* 92.

On the *third*—*Mitf. Plead.* 39, 144. *Wiser vs. Blackly,*
1 *Johns. Chan. Rep.* 438; and the act of assembly of 1818,
*ch.* 193, *s.* 14.

*Magruder,* for the Appellees, on the *second point*, cited
*Raphael vs. Boehm,* 13 *Ves.* 407, 590; and *Dunscomb vs.
Dunscomb,* 1 *Johns. Chan. Rep.* 508.

On the *third*—*Wendell vs. Van Renselear,* 1 *John. Chan.
Rep.* 349. *Wiser vs. Blackly,* *Ibid* 438; and *Brown vs.
Ricketts,* 3 *Johns. Chan. Rep.* 553.

ARCHER, J. delivered the opinion of the court. The ap
pellants' counsel have urged three grounds for the rever-
sal of the decree in this case:

1. That by the bill a discretion is vested in the respon-
dents, with which the chancellor should not interfere,
without evidence of an abuse of such discretion, and that
there is no such evidence in the record.

2. That the chancellor has charged compound interest.

3. That *Deborah Edwards, Eliza Dorsey* and *Evelina
Dorsey,* should have been made parties.

The first objection cannot be supported. The court are
of opinion, that the executors, so far as regards Mrs. *Cat-
lett,* have been unmindful of the trust reposed in them by
the will. One of them has been so entirely inattentive to
the wants of the complainant, that he has placed reliance
upon the vague information of others, without giving him-
self the trouble, as it was his duty to have done, to inves-
tigate its truth. As a vigilant trustee he was called upon,
by the character of his trust, to ascertain, by the proper
evidences, which was surely always in his power to obtain,
that the contingencies had or had not happened upon
which the trusts were to be executed, and he was surely
wandering from the path of his duty when he depended
upon the casual information derived from such question-
able sources. The other respondent formed the determi-
nation not to pay her any thing, until she should be reduced
to a state of utter destitution by the boundless indiscretion

1825.

Darne
vs
Catlett

of her husband, and has placed a construction on the terms of the bequest entirely inconsistent with the beneficent intentions of the testator. Although the testator has declared expressly, that in this bequest he has *made a provision for his daughter,* her interests are viewed in a secondary light, and the apprehensions of a profligate expenditure, by the husband, of any thing which might be paid, has but too evidently operated as a reason for the indefinite postponement of the execution of the duties of the trust. The testimony in the cause clearly represents her to have been in a situation which the testator anticipated, and they are both *proved* to have in *effect* acknowledged, that her necessities called for their interposition; yet the reception of a threatening letter constitutes the frivolous reason for the non-payment. The chancellor, from the answers and evidence in the cause, has rightly conceived, that the proceeds of this fund should be placed under the control of that court, subject to be applied, as occasion might require, towards the fulfilment of the intentions of the testator, in administering to her wants, and in supplying her with the means *of a decent support.*

But this court cannot concur with the chancellor in the allowance of compound interest. *It is neither charged, nor proved, that the executors had appropriated any of the bequest, or of the proceeds thereof, to their own use, or employed them in their own business; or in any way made any profit or gain from them, or in any manner subjected them to hazard. Rocke vs Hart,* 11 *Ves.* 59. *Schieffelin vs Stewart,* 1 *Johns. Chan. Rep.* 624. *Nor is there any reason to presume from the testimony; a profit or a gain. Treves vs Townshend,* 1 *Bro: Chan. Ca.* 385. *Hilliard's case,* 1 *Ves. jr.* 90. *Piety vs Stace,* 4 *Ves.* 620. *Rocke vs Hart,* 11 *Ves.* 58. On the contrary, if any inference is to be drawn from the proceedings in the cause, as to their disposition of the funds, it is merely that they have suffered the trust money to lie idle. Indeed, it does not appear to have been the intention of the testator, by directing an investment, that the proceeds should accumulate by a re-investment, but to gratify his object the interest should always have been in such a situation as to be immediately applicable to the object of his bounty, and give her the means of a comfortable subsist-

1825.
Darne
vs
Gatlet;

ence. The interest was not to be paid at all events annually, but if her exigencies had not been such, in any given year, as to require payment, yet unfortunate occurences might have happened which would have demanded from them the payment of interest, which might have remained on hand for successive years. It was therefore proper that the interest of this fund should always have been kept within their control and power, for immediate relief, when unforeseen necessities or misfortunes might have demanded its application. This control could not have been so well exercised had the interest, as it accrued, been regularly invested, or put out to interest. It is therefore the opinion of the court, that there is no ground to charge the executors with more than the legal interest.

It is a general rule, that all persons interested in the subject of a suit should be made parties, whether that interest be legal or beneficial. The reason of this principle is, that the court may be enabled to make a complete decree between the parties, may prevent future litigation by rendering a multiplicity of suits unnecessary, and may make it perfectly certain that no injustice shall be done either to the parties before the court, or to others who may be interested in a decree that may be grounded upon a partial view only of the real merits. *Mitford,* 29, 220, 144. *Cooper Eq. Pl.* 185. To this general rule there are many exceptions growing out of cases where, consistently with practical convenience, it would be incapable of application. *West vs. Randal,* 2 *Mason's Rep.* 181, 190, per *Story,* J. To these cases it is entirely unnecessary to advert, because we do not conceive that the case before us comes within the scope of the general rule. The mother applies to the court to compel the application of the interest to relieve her necessities. This application for relief is confined to the terms of the trust, and to that portion of the trust money to which she has an interest. The principal belonging to her children is not sought to be affected. It is true they have an interest in any balance of this fund, applicable to her use, which at her death may remain unexpended. But the power conferred is entirely discretionary in the executors, and they are at liberty to apply the whole of it to the mother, if they deem it proper. Having this unlimited discretion reposed in them, it is believed

1825.

Darne
vs
Catlett

that they could not be held accountable to the children. At all events, the interest is decreed to be paid into court for the purposes of the trust, and their contingent rights to this fund are left entirely *untouched by the decree.* There it will remain, subject to future appropriation, and if they deem its expenditure at any time made at periods and under circumstances not called for by the will, they would doubtlessly have the power to protect any interest they might have by an original application to the chancellor.

EARLE, J. The decree in this case ought in my judgment to be affirmed. I do not consider the interest charged on the annuity, which the necessities of Mrs. *Catlett* required to be paid to her, as compound interest.

STEPHEN, J. concurred in opinion with Judge *Earle.*

DECREED, that the decree of the court of chancery, in that part thereof which ordered and adjudged that the defendants should, on or before the 24th of June then next, bring respectively into that court the sums of money therein mentioned, be reversed. And decreed, that *Darne,* one of the appellants, shall on or before such day as the chancellor shall direct, bring into the court of chancery the sum of $530, being the amount of the interest due on the sum of $2000 retained by him, calculated from the 25th of November 1818, to the 23d of April 1823, with interest on the said sum of $530 from the 23d of April 1823, until the time of bringing the same into the said court; and also that *Gassaway,* the other appellant, on or before, &c. bring into the court of chancery the sum of $1300, being the amount of the interest due on the sum of $4000 retained by him, calculated from the 25th of November 1817, to the 23d of April 1823, with interest on the said sum of $1300, &c. Decreed also, that the residue of the said decree of the court of chancery be affirmed—Each party to pay their respective costs incurred in this court. That the chancellor pass such order and decree as may be proper and necessary to carry into full and complete effect the decree of this court.

DECREE REVERSED, &c.